UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

**UNITED STATES OF AMERICA,**

        **Plaintiff,**     Case No. 2:22-CR-15

   v.      Hon. Janet T. Neff
         U.S. District Court Judge

**GREGORY JAMES KNUUTTILA,**

        **Defendant.**

---

### DEFENDANT'S SECOND SUPPLEMENTAL SENTENCING MEMO PRESENTING VERY RECENTLY DECIDED CASE LAW

---

Mr. Gregory James Knuuttila, through his attorney Scott Graham, offers this second supplemental sentencing memo to address, very briefly, certain recent updates in Sixth Circuit case law. He hopes these citations from decisions reached last week will shed additional light on the pending sentencing issues in this matter.

The first new case Mr. Knuuttila would cite for the Court is *United States v. Histed*, No. 22-2080 (6th Cir. Feb. 22, 2024) (for publication). In *Histed*, the appellate court considered and vacated a 300-month sentence imposed in a drug-distribution (meth) case. *See Histed*, No. 22-2080, slip op. at 1-2. There, the district court "never settled on a specific amount of methamphetamine to attribute to [the defendant]." *Id.* at 4. The sentencing court had noted the difficulty of finding, "by a preponderance or otherwise," the drug quantity: it was hard "to drill down exactly" and decide "how much is fairly put on him." *Id.* (citing district court). The sentencing court overruled the defense's objections to the sentence enhancements and declined a reduction for acceptance of responsibility; it calculated the advisory guideline range as 360 months to life; and it varied downward, imposing a 300-month sentence. *Id.*

1

Ultimately, "[b]ecause the district court did not adequately explain how it arrived at offense level 32," the Sixth Circuit vacated that sentence. *Id.* at 6.

Obviously, this Court is trying to avoid a similar outcome here and taking more care in this process. Counsel cites *Histed* in the hopes of aiding these efforts. The *Histed* court emphasized the need to err on the side of caution and the need for reliability in making drug-quantity estimates. *See id.* District courts "must specify the evidence" upon which they rely in making drug-quantity determinations. *Id.* Factual findings must be specific. *Id.* "To that end, district courts must articulate the methodology they use and explain how they arrived at the 'final figure' because 'it is especially important to create a clear record to facilitate appellate review.'" *Id.* (citing case law). A general "survey" of the evidence will not suffice. *See id.* at 7. Likewise, the government does not get multiple "bites at the apple" during this process. *See id.* at 8-9 (emphasizing that "the government will not get a 'second bite at the apple' to present additional evidence" on remand).

Under this rubric, Mr. Knuuttila would reiterate his objection to allowing the government a second chance to make its case. *See, e.g.*, RE. 117: Sent.-Hrg. Trans. I, 1/25/24, PageID # 904-05. And he would point out that the loose, biased, unreliable informant allegations he has been attacking here hardly provide specific evidence and can hardly undergird any sort of reliable calculation methodology. *Cf. Histed*, No. 22-2080, slip op. at 17 (Murphy, J., concurring in part and dissenting in part) (pointing out cases in which *physical evidence* like drug packaging and money supported the drug-quantity determination); *see also id.* at 18-19 (discussing issues with informant hearsay allegations, allegations that the majority opinion necessarily discounted in vacating the sentence) & 22 (discussing physical evidence that was necessarily inadequate for the majority in light of the majority's decision to vacate the sentence).

The *Histed* decision also touches on credit for acceptance of responsibility, even when obstruction of justice presents an issue. *See Histed*, No. 22-2080, slip op. at 14. In *Histed*, the appellate court

specifically highlighted the fact that a defendant found to have obstructed justice can still receive an acceptance-of-responsibility reduction if their obstructive conduct predated entry of the guilty plea, if that defendant eventually accepts responsibility for their offense and abandons all attempts to obstruct justice. *See id.*

As Mr. Knuuttila has already pointed out, no one questioned his acceptance of responsibility until he raised *legal* objections to the calculation of his guidelines. *See* RE. 112: Sent. Memo, PageID # 778-79. This timing is extremely problematic. At the time of the plea, and at the time the probation office filed the initial presentence investigation report, everyone basically agreed that Mr. Knuuttila should receive credit for acceptance of responsibility. *See* RE. 93: Plea Agreement, PageID # 273-74, ¶ 10; RE. 104: Initial PSIR, PageID # 623, ¶¶ 98-99; RE. 105: Gov. Obj. to Initial PSIR, PageID # 659 (noting no objection to credit for acceptance of responsibility). As time passed, nothing changed—until Mr. Knuuttila questioned the *legal foundation* for enhancement of his advisory sentencing guidelines. *See* RE. 109: Final PSIR, PageID # 692, ¶ 107. Indeed, the alleged conduct the final presentence report has raised to try to deny Mr. Knuuttila credit for acceptance of responsibility predates entry of the guilty plea, and the government, at the time of the plea, had no problems with granting credit for acceptance of responsibility. *See id.* at 736 (noting January 2023 date for allegations); *see also* RE. 93: Plea Agreement, PageID # 273-74, ¶ 10 (filed in August 2023). (The recent amendments to § 3E1.1, of course, clarify that sentencing objections should not hinder a defendant's receipt of full credit for acceptance of responsibility. *See* U.S.S.C. § 3E1.1(b).)

In *Histed*, the appellate court upheld the denial of credit for acceptance of responsibility based on what the defendant had said and done *after* pleading guilty. *See Histed*, No. 22-2080, slip op. at 15. This state of affairs markedly distinguishes the case from the situation with Mr. Knuuttila.

In *United States v. Jackson*, released a day after *Histed*, the Sixth Circuit provides a little more guidance on drug-quantity calculations. *See United States v. Jackson*, No. 22-3164 (6th Cir. Feb. 23,

2024) (unpublished). Again, the appellate court reiterated the standard: a sentencing court "can hold a defendant accountable for a specific amount of drugs only 'if the defendant is more likely than not responsible for a quantity greater than or equal to that amount' and can make quantity estimates 'supported by competent evidence in the record.'" *Id.* at 2-3 (citing case law). Some corroboration must support an informant's allegations in this context. For example, "[i]f record evidence corroborates several of an informant's specific claims, the court may find him reliable and credit a claim that is not specifically corroborated." *Id.* at 3. In *Jackson*, authorities had wiretap evidence and controlled buys that went toward corroborating informant allegations. *See id.* at 3. In that case, the sentencing judge "did exclude five drug transactions from [the defendant's] drug-quantity calculations because the record lacked enough detail to estimate accurately the amounts involved in those transactions." *Id.* at 4 (also noting the probation officer's recommendation of this approach).

With regard to the *Jackson* decision, the defense here must also note that Judge Karen Nelson Moore dissented, stressing the informant's unreliability. *See id.* at 6 (Moore, J., dissenting). Likewise, the defense would point out that in another case decided on February 23, 2024, *United State v. Wimberly*, No. 23-5224, slip op. at 5 (6th Cir. Feb. 23, 2024) (unpublished), authorities found *actual* drugs—in the pocket of a discarded sweatshirt that matched one the defendant had been wearing earlier—when the government tried to attribute that drug quantity to the defendant (and the appellate court upheld that attribution). Counsel hopes all this case law may aid decision making here.

Dated: February 28, 2024      Respectfully Submitted,

By: /s/ Scott Graham
Attorney for Defendant
Business Address:
1911 West Centre Avenue, Suite C
Portage, Michigan 49024
(269) 327-0585

4